NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STRIKEFORCE TECHNOLOGIES, INC., | : : : | Civil Action No. 13-1895 (SRC) |
| Plaintiff, | : : |  |
| v. | : : | OPINION |
| WHITESKY, INC., | : : |  |
| Defendant. | : : : |  |

**CHESLER**, District Judge

      This matter comes before the Court upon the motion filed by Defendant WhiteSky, Inc. ("Defendant" or "WhiteSky") to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6).  Plaintiff StrikeForce Technologies, Inc. ("Plaintiff" or "StrikeForce") has opposed the motion. The Court has considered the papers filed by the parties and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons expressed below, the Court grants in part and denies in part WhiteSky's motion.

**I.  BACKGROUND**

      This case arises out of a contract between StrikeForce, a provider of anti-keylogging software, and WhiteSky, a company that sells internet security products. Under the parties' contract, StrikeForce agreed to license a customized version of its GuardedID software to

1

WhiteSky for integration into WhiteSky's products, in exchange for royalties on the sale of products that include the licensed software. The parties first executed their contract in May 2010 and subsequently amended it numerous times. The most recent and governing contract is the May 10, 2011 Second Amended Software License and Development Agreement, a copy of which has been attached to the Complaint. The Court will hereinafter refer to the May 10, 2011 contract as the "Agreement."

According to the Complaint, on two occasions StrikeForce acceded to WhiteSky's demands to reduce fees charged for using the StrikeForce software but could not agree to a third demand made by WhiteSky in late 2011. Plaintiff alleges that WhiteSky threatened that StrikeForce's anti-keylogging software would be replaced with a cheaper competitor's product. While the parties' business relationship continued nonetheless, StrikeForce alleges that throughout 2012, end users of WhiteSky products containing StrikeForce software dwindled as did the corresponding royalty fees. The Complaint alleges that WhiteSky replaced StrikeForce's Customized Software with another company's anti-keylogging software, prior to the expiration of the three-year term of the parties' Agreement. It further alleges that in the process of developing the "Customized Software" and modifying the GuardedID technology for integration into the WhiteSky products, StrikeForce shared confidential information and trade secrets with WhiteSky about GuardedID and certain unique features of that software, such as CryptoColor. According to the Complaint, WhiteSky has given a third party access to StrikeForce's confidential information and proprietary technology and, moreover, continues to use components of its Customized Software, including the CryptoColor feature.

The Complaint asserts claims for breach of contract, misappropriation of trade secrets under the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 et seq., conversion, promissory

2

estoppel and unjust enrichment, as well as a separate count for injunctive relief. WhiteSky has moved for dismissal of the Complaint in its entirety for lack of personal jurisdiction and improper venue, and also for failure to state a claim upon which relief may be granted. The Court has previously entertained and ruled upon Plaintiff's motion for a preliminary injunction, which was denied by Order of June 11, 2013.

II. DISCUSSION

A. Personal Jurisdiction

WhiteSky is a Delaware corporation. It maintains its principal place of business and only office in Mountain View, California. WhiteSky maintains that this Court does not have personal jurisdiction over it and moves to dismiss the action pursuant to Rule 12(b)(2). The burden thus falls on Plaintiff, as the non-movant, to establish the existence of personal jurisdiction over WhiteSky. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Specifically, "the plaintiff must 'prove by affidavits or other competent evidence that jurisdiction is proper.'" Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir.2009) (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir.1996)).The Third Circuit directs, however, that the district court evaluating a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(2) "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Id.

The Federal Rules of Civil Procedure provide that a district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under state law. Fed.R.Civ.P. 4(k)(1). A district court exercising diversity jurisdiction over a case must look to the forum state's long-arm statute in analyzing whether there is personal jurisdiction over a non-resident

3

defendant.  Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993).  New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the fullest limits of due process."  IMO Indus., Inc. v. Kiekert AG, 155 F.2d 254, 259 (3d Cir. 1998).  The Fourteenth Amendment's Due Process Clause requires that "individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  Consistent with the Due Process Clause, a court may assert personal jurisdiction so long as the defendant has "certain minimum contacts" with the forum, in this case New Jersey, such as not to "offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  There are "two types of personal jurisdiction which comport with these due process principles: general and specific jurisdiction.  General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state . . . .  Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state."  Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008).

StrikeForce argues that this Court has specific jurisdiction over WhiteSky, based on WhiteSky's actions in and relating to New Jersey in connection with the Agreement that forms the basis of this action.  Because this is a contract action, StrikeForce must establish that WhiteSky's contacts with New Jersey were "instrumental in either the formation or the breach of the contract."  Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012).  StrikeForce has submitted an affidavit by its executive vice president which points to various purposeful activities by WhiteSky that occurred in or were directed to New Jersey.  WhiteSky entered into a contract with a company headquartered in New Jersey.  The

4

negotiations leading to the formation of the contract occurred through numerous telephone calls directed by WhiteSky to StrikeForce in New Jersey.  Further communications between the parties, via telephone and the mail, took place throughout performance of the contract.  After the parties formalized their business relationship through execution of the licensing agreement, WhiteSky's founder visited StrikeForce's New Jersey offices on two occasions, once in July 2010 and once in July 2011, both of which related to the parties' licensing agreement.  Though WhiteSky contends that the visits had nothing to do with the actual formation or breach of the Agreement, it does not dispute that either the communications or the visits related to the parties' performance under the Agreement.  The Court notes that the parties' entire business relationship centers on the licensing arrangement memorialized in the Agreement.  Construing all facts regarding *in personam* jurisdiction in favor of StrikeForce, as it must on WhiteSky's Rule 12(b)(2) motion, the Court finds that it is both plausible and proper to conclude that the regular communications by WhiteSky directed at New Jersey, in connection with both negotiating and performing under the Agreement, demonstrate WhiteSky "purposefully avail[ed] itself of the privilege of conducting activities within the forum State [New Jersey], thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 147-48 (3d Cir.), cert. denied, 506 U.S. 817 (1992) (holding that telephone calls and correspondence directed by non-forum resident to New Jersey in connection with negotiating loan agreement together with one visit by non-forum resident to New Jersey provided sufficient minimum contacts to satisfy due process).

Moreover, the deliberate connection made by WhiteSky with New Jersey in relation to the Agreement is bolstered by the contract itself.  Both the initially executed contract and the governing Agreement underlying this breach of contract case contain a section entitled

"Governing Law and Forum" which provides that the Agreement is governed by the laws of the State of New Jersey. (Agreement, § 13.12.) This provision, combined with the other factors and contacts discussed above, reinforces WhiteSky's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation [in New Jersey]." Budget Blinds, Inc. v. White, 536 F.3d 244, 261 (3d Cir. 2008) (quoting Burger King, 471 U.S. at 482).

Though WhiteSky argues that any one of these contacts, standing alone, is insufficient to establish specific jurisdiction, the Court must not consider them in isolation. Id. (holding that, with respect to contractual relationships and specific jurisdiction, Burger King instructs that court must evaluate various factors, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing")." Putting together the various contacts with New Jersey demonstrates that WhiteSky actively sought out, pursued and transacted upon a contract with a New Jersey company.

StrikeForce has carried its burden of demonstrating specific jurisdiction. The Court finds that, in addition to WhiteSky's minimum contacts with New Jersey, the causes of action before the Court in this case arise out of WhiteSky's forum-related activities, that is, its connection to New Jersey and deliberate affiliation with this state through the creation of the business relationship with StrikeForce and course of dealing under the Agreement. In light of the foregoing, the Court further finds that WhiteSky cannot claim surprise or unfairness at having to defend itself in this foreign forum, and thus the exercise of specific personal jurisdiction over it by this Court comports with principles of fair play and substantial justice.

Accordingly, insofar as WhiteSky seeks dismissal of the Complaint pursuant to Rule 12(b)(2), the motion will be denied.

### B. Improper Venue

Defendant also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that laying venue of this action in the District of New Jersey is improper under 28 U.S.C. § 1391. It bases this argument, however, on the contentions that the alleged breach of the Agreement did not occur in New Jersey and that WhiteSky is not subject to personal jurisdiction in New Jersey. Section 1391(b) provides that "a civil action may be brought in –

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Venue is proper in this district pursuant to § 1391(b)(1), based on this Court's personal jurisdiction over WhiteSky. Section 1391(c) provides that, for purposes of determining proper venue, an entity – such as corporate Defendant WhiteSky – "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2). WhiteSky may therefore be deemed to reside in New Jersey within the meaning of 28 U.S.C. § 1391(b)(1). Accordingly, dismissal of this action for improper venue is not warranted.

### C. Sufficiency of the Claims As Pled

Federal Rule of Civil Procedure 12(b)(6) governs dismissal for failure to state a claim upon which relief can be granted. A complaint will survive a motion under Rule 12(b)(6) only if

7

it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.)  Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and then determine whether a reasonable inference may be drawn that the defendant is liable for the alleged misconduct." Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011). While the Court must accept all factual allegations as true, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.  In a Rule 12(b)(6) motion, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).

      Defendant challenges the sufficiency of each of the Complaint's six counts.  The Court will evaluate each one in turn.

1. Breach of Contract

To assert a breach of contract claim under New Jersey law,[1] a plaintiff must allege a valid contract between the parties, defective performance by the defendant in violation of the contract, damages from the breach and a showing that the plaintiff has performed its contractual duties. Cotter v. Newark Housing Auth., 422 F. App'x 95, 98 (3d Cir. 2011); Video Pipeline, Inc. v. Buena Vista Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002). A valid contract is deemed breached if one of the parties to the agreement does not fulfill a contractual obligation that it owes to the other party under the contract. United States v. Bills, 639 F. Supp. 825, 829 (D.N.J. 1986).

The Complaint asserts that WhiteSky has violated the Agreement in the following ways: (1) using another company's anti-keylogging software during the three-year term of the Agreement; (2) failing to market and sell products using the StrikeForce software; (3) using StrikeForce software and/or components thereof without reporting such use and paying royalty fees for the Desktop Products; and (4) disclosing trade secrets and confidential information and using such proprietary information. WhiteSky, in moving to dismiss the entire breach of contract claim, has argued that as to each of these acts, the Complaint either fails to identify the contractual provision that was breached or fails to allege sufficient, non-conclusory facts

---

[1] A federal court sitting in diversity must apply the substantive law of the forum state, unless a federal statute or the Constitution direct otherwise. Salve Regina College v. Russell, 499 U.S. 225, 226 (1991) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)); Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007). The Court notes that the parties have not raised a choice of law issue as to any of the common law claims asserted in the Complaint, and both Plaintiff and Defendant have briefed the claims according to New Jersey law. Accordingly, in reviewing the sufficiency of the claims as pled, the Court applies the law of New Jersey to the breach of contract claim as well as the other common law claims. Moreover, "in diversity cases . . . state substantive law controls the construction of a contract." Cooper Labs. v. Int'l Surplus Lines Ins. Co., 802 F.2d 667, 672 (3d Cir.1986); Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F.Supp. 342, 348–49 (D.N.J.1996).

demonstrating that a breach occurred. The four grounds on which the breach of contract claim is based will be addressed in turn.

First, as to the alleged replacement of StrikeForce software with a third party's anti-keylogging software, WhiteSky contends that Plaintiff points to no provision in the Agreement which requires WhiteSky to use StrikeForce as the exclusive supplier of software or prohibits WhiteSky from using another vendor's software in the WhiteSky products. To the contrary, WhiteSky asserts, the Agreement expressly permits WhiteSky to use StrikeForce's software "at its sole discretion." (Agreement § 3.2(a)) StrikeForce, in opposition, argues that § 4.2(c) of the Agreement imposes an obligation on WhiteSky to market and distribute the "Desktop Products" – the term used in the Agreement to identify WhiteSky products containing StrikeForce software – and that WhiteSky's actions in phasing out the StrikeForce software from its products ran afoul of that obligation. The provision on which StrikeForce relies provides that "WhiteSky shall promote the distribution of the Desktop Products, minimally through its normal marketing programs in all the regions WhiteSky sells its Desktop Products." (Agreement, § 4.2(c)) StrikeForce further argues that the discretionary rights language cited by WhiteSky cannot be construed to negate WhiteSky's obligation to market the Desktop Products, in part because such a construction of the contract would be illogical and in part because the language has been quoted by WhiteSky out of context. StrikeForce points out that the clause regarding discretionary use of the StrikeForce software appears in the section of the Agreement dealing with rights to use StrikeForce trademarks.

The Court concludes that, under the standard imposed by Rule 8(a), breach of the Agreement based on the phasing out and/or replacement of the StrikeForce software has been sufficiently pled. Though the parties are at odds as to the proper construction of the Agreement's

terms, the Court must on this motion to dismiss construe all facts in Plaintiff's favor. Plaintiff has pointed to a contractual provision that required WhiteSky to promote the distribution of its products containing StrikeForce software "minimally" and alleged that substitution of a third party's software into the WhiteSky products to the detriment of StrikeForce violates this obligation.

 Granted, the meaning and scope of the provision on which Plaintiff relies are far from clear, but that lack of clarity itself militates against dismissing the breach of contract claim. Ambiguity in a contract exists "if the terms of the contract are susceptible to at least two reasonable alternative interpretations." Assisted Living of Moorestown, L.L.P. v. Moorestown Twp., 31 F.Supp.2d 389, 398 (D.N.J.1998). While ambiguity itself is a question of law, the proper interpretation of a term or provision deemed by the Court to be ambiguous is a function for the jury. See Biovail Corp. Int'l v. Hoechst Aktiengesellschaft, 49 F. Supp. 2d 750, 774 (D.N.J. 1999). A determination of ambiguity requires the Court to consider extrinsic evidence, such as the parties' conduct and bargaining history. Id. At this stage of the proceedings, "it is simply too early to determine whose interpretation of the relevant provision is correct or even whether the provision is sufficiently ambiguous to warrant referral to the fact-finder." Id. at 775.

 Accordingly, the breach of contract claim based on the replacement of StrikeForce software may proceed.

 For the same reasons, the alleged failure by WhiteSky to market and sell the Desktop Products in compliance with the Agreement also suffices to state a breach of contract claim. This alleged breach is based on the same contractual provision, § 4.2(c), quoted above. Plaintiff argues that by using alternative anti-keylogging software in its products, WhiteSky has ceased selling the Desktop Products and thus violated its obligation to promote the Desktop Products at

least to the extent WhiteSky promotes its other products, which is Plaintiff's interpretation of the "minimal" marketing requirements imposed by the Agreement. Construing all facts in Plaintiff's favor, the Court concludes that the Complaint adequately alleges a breach in this regard.

The next asserted violation of the Agreement – WhiteSky's alleged failure to account for and pay royalties -- also suffices to state a breach of contract claim. The Agreement requires WhiteSky to pay StrikeForce fees based on the number of "End User" subscriptions to the Desktop Products, that is, download and installation of the Desktop Products for personal use. (Agreement § 5.1(c))  It also requires that WhiteSky provide StrikeForce with quarterly reports regarding End User upgrades, renewals and deactivations of the Desktop Products.  (Agreement § 5.4)  According to the Complaint, the reporting requirement was intended to permit transparency as to the number of customers for which a royalty fee would be owed to StrikeForce.  The Complaint alleges that "WhiteSky has never provided StrikeForce with any quarterly report."  (Compl. ¶ 23) It also alleges that because of WhiteSky's improper replacement of StrikeForce software with the anti-keylogging software of third parties, StrikeForce has been deprived of the royalties that would otherwise be generated by the sale of Desktop Products and which StrikeForce expected, given its position that the Agreement imposed an exclusivity obligation on WhiteSky.  Thus, in this way, Plaintiff alleges, WhiteSky has breached its obligation to pay royalties.  The Court finds that, based on the uncertainty of the proper interpretation of contractual terms and the current posture of this litigation, it is appropriate to accept Plaintiff's proffered interpretation for purposes of this motion.  As such, the Complaint contains sufficient factual allegations to demonstrate plausible violations of the Agreement's royalty and reporting provisions.

Finally, Plaintiff alleges that WhiteSky continues to use components of StrikeForce's software, including the CryptoColor feature, and has disclosed to a third party StrikeForce's trade secrets and other confidential information regarding StrikeForce's technology in order to copy, replicate and/or reverse-engineer StrikeForce's software. StrikeForce claims that these actions violate the Agreement's prohibition on the use of the software in any way, except as expressly authorized by the Agreement, as well its prohibition on any use and/or disclosure of StrikeForce's Confidential Information, with certain express and limited exceptions. (Agreement §§ 3.1, 7.2) In further support of its claim that WhiteSky's use and disclosure of trade secrets violates the Agreement, StrikeForce points to provisions that acknowledge StrikeForce's proprietary interest in the licensed anti-keylogging software and the confidential information embodied in the software. In particular, the Agreement states that "Whitesky acknowledges that SFT [StrikeForce] owns and distributes in various forms the components of the Customized Software as part of SFT's published and patent pending GuardedID products, and that the GuardedID software is not generally published and embodies SFT trade secrets." (Agreement § 3.1(a)) StrikeForce also argues, in support of its position that intellectual property has been improperly used and/or disclosed, that the Agreement defines "intellectual property" broadly as "any and all Trademarks, know-how, methodologies, processes, technologies, analysis, models, techniques, proprietary information . . . software, software code (in any form including without limitation source code and object code or executable code), user interfaces, and other forms of technology." (Agreement, § 1.12)

StrikeForce's reliance on various contractual provisions limiting the use of its technology and dissemination of its confidential information does not, by itself, suffice to state a plausible claim of breach. Notably missing from the Complaint are non-conclusory factual allegations

13

setting forth what actions WhiteSky allegedly took to violate these provisions.  At best, the Complaint parrots the language of the Agreement, asserting that in the course of replacing StrikeForce software with a competitor's anti-keylogging software, "WhiteSky is believed to have granted third parties access to StrikeForce's technology, to reuse, copy, replicate, and/or reverse-engineer StrikeForce's Customized Software."  (Compl., ¶ 52).  It also asserts that WhiteSky is developing software leveraging the StrikeForce technology and intellectual property.  (Id.)  These amount to no more than the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Supreme Court held do not suffice to meet the pleading requirement of Rule 8(a) and withstand a motion to dismiss.  Iqbal, 556 U.S. at 678.

The inadequate pleading as to this aspect of the breach of contract claim may, possibly, be cured through the addition of concrete factual allegations. As such, the Court will dismiss this portion of the breach of contract claim without prejudice and grant Plaintiff leave to re-plead for the purpose of enhancing the claim with facts demonstrating that WhiteSky committed the asserted breaches, assuming the facts alleged to be true.  See Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.").

        2.   Misappropriation of Trade Secrets Under New Jersey Trade Secrets Act

Based on the same factual allegations that WhiteSky is using and disclosing to third parties StrikeForce's trade secrets without StrikeForce's authorization and in violation of the Agreement, the Complaint asserts a claim under the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq.  The statute prohibits the actual or threatened misappropriation of a trade secret.

14

N.J.S.A. 56:15-3. The New Jersey Trade Secrets Act provides that the following acts constitute misappropriation:

>   (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
>   (2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
>
>   >   (a) used improper means to acquire knowledge of the trade secret; or
>   >
>   >   (b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or
>   >
>   >   (c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

N.J.S.A. 56:15-2. It defines "trade secret" broadly as "information . . . without regard to form" that has economic value as a result of not being known to others who might derive economic value from its use and that is the subject of reasonable efforts to maintain its secrecy. Id.

Despite the proffered legal foundation for the cause of action, the New Jersey Trade Secrets Act claim, as pled, suffers from the same deficiencies as the breach of contract claim predicated on unauthorized use and disclosure of trade secrets and confidential information. The claim may not proceed based on allegations that do nothing more than recite the elements of the cause of action without stating facts which would plausibly establish WhiteSky's liability under the statute. Iqbal, 556 U.S. at 678-79. Given the same possibility of curing these deficiencies, as discussed above, dismissal of New Jersey Trade Secrets Act claim will also be without prejudice and with leave to re-plead.

3. Conversion

The claim for conversion must be dismissed. Under New Jersey law, conversion "is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Advanced Enters. Recycling, Inc. v. Bercaw, 376 N.J.Super. 153, 161 (App.Div.2005). The conversion claim in this case is predicated upon the alleged misuse of confidential information StrikeForce avers it provided to WhiteSky in the course of performing under the Agreement. The Complaint alleges that WhiteSky is using StrikeForce's software (or components thereof) and /or its intellectual property, as defined by the Agreement, outside the permitted scope of use. However, a cause of action for conversion relates to interference with tangible property and does not protect rights to intangible property. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F.Supp.2d 552, 568 (D.N.J.2002). Software code, trade secrets, and other intellectual property have generally been recognized as intangible property, that is, property without physical embodiment. Premio Foods, Inc. v. Purdue Farms, Inc., No. 11-4968, 2012 WL 3133791, at *6 (D.N.J. July 30, 2012) (dismissing conversion claim based on misappropriation of trade secrets because trade secrets are not tangible property); Slim CD, Inc. v. Heartland Payment Sys., Inc., No. 06-2256, 2007 WL 2459349, at *12 (D.N.J. Aug. 24, 2007) (dismissing conversion claim based on allegation that customer transaction data was taken, reasoning that such data was not tangible property subject to a conversion claim); see also Microsoft Corp Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 819 (3d Cir. 1994) (noting trade secrets and compute software as examples of intangible property). Misuse of data or confidential software information, such as that alleged in the claim against WhiteSky, does not state a cognizable conversion claim. See Premio Foods, 2012 WL 3133791, at *6; Slim CD, 2007 WL 2459349, at *12.

      4. <u>Promissory Estoppel</u>

The claim of promissory estoppel encompasses four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee would rely upon it; (3) reasonable reliance; and (4) definite and substantial detriment. <u>Toll Bros., Inc. v. Board of Chosen Freeholders of County of Burlington</u>, 194 N.J. 223, 253 (2008). "The doctrine of promissory estoppel permits the enforcement of gratuitous promises where 'substantial hardship or injustice which would result if such a promise were not enforced.'" <u>Nye v. Ingersoll Rand Co.</u>, 783 F. Supp. 2d 751, 765 (D.N.J. 2011) (quoting <u>Pop's Cones, Inc. v. Resorts Intern. Hotel, Inc.</u>, 307 N.J.Super. 461, 469 (App.Div.1998)). It is, however, a quasi-contractual theory of recovery, and unlike a true contract, a quasi-contract creates an obligation based not on the parties' expressed intentions but rather by law for reasons of justice. See <u>Sullivan v. Sovereign Bancorp., Inc.</u>, No. 99-5990, 2001 WL 34883989, at * 9 (D.N.J. Jan. 19, 2001). "Claims in quasi-contract cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." <u>Jones v. Marin</u>, No. 07-0738, 2009 WL 2595619, at * 6 (D.N.J. Aug. 20, 2009).

While this principle would otherwise militate in favor of dismissal of the promissory estoppel claim, and the Agreement does contain an integration clause, as WhiteSky points out in its brief, the particular subject of exclusivity of the licensing arrangement between the parties is a contested matter and is not apparently addressed on the face of the Agreement. The Complaint alleges that apart from the Agreement, Whitesky made various promises to StrikeForce, including in particular, the promise that "StrikeForce would be its exclusive anti-keylogging product." (Compl., ¶ 75). StrikeForce alleges that it relied on WhiteSky's promises and was harmed when WhiteSky replaced the StrikeForce software with a third party's technology, depriving StrikeForce of royalties it expected to earn. In light of such factual allegations, and

17

because Federal Rule of Civil Procedure 8(d) permits the pleading of claims in the alternative, the Court will not dismiss the promissory estoppel claim. See, e.g., Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc., No. 11-2775, 2012 U.S. Dist. LEXIS 30466, at *26 (D.N.J. Mar. 6, 2012) (holding that despite the breach of contract claim, plaintiff was not foreclosed from pursuing a promissory estoppel claim because Rule 8(d)(3) permits a party to "state as many separate claims or defenses it has, regardless of consistency.")

     5. Unjust Enrichment

The "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time if performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Unjust enrichment is also a quasi-contractual theory of relief and, like promissory estoppel, generally not sustainable alongside a breach of contract claim where the valid, enforceable contract fully defines the parties' rights and obligations. See Jones, 2009 WL 2595619, at * 6. However, given the posture of this case and alternative pleading under Rule 8(d), the Court will, for the same reasons set forth in its discussion of the promissory estoppel claim, permit the unjust enrichment claim to proceed past this motion to dismiss.

     6. Injunctive Relief

Defendant is correct that a claim for injunctive relief pleads for a remedy but does not constitute an independent cause of action. See Hammer v. Vital Pharms., Inc., No. 11-4124, 2012 WL 10198842, at * 13 (D.N.J. Mar. 26, 2012); Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010). Such relief is requested in the Complaint's *ad damnum* clause. Count VI for "injunctive relief" will accordingly be dismissed, but the Court wishes to make

clear that such dismissal will have no effect on Plaintiff's request for "the issuance of a preliminary or permanent injunction barring WhiteSky from using or disclosing StrikeForce's Confidential Information and intellectual property . . ." as set forth at the conclusion of the Complaint.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss without prejudice the breach of contract claim insofar as it is based on the alleged violation of the Agreement's prohibition on unauthorized use of trade secrets and intellectual property and on the disclosure of such matters. It will also dismiss the New Jersey Trade Secrets Act claim without prejudice. Leave to re-plead these claims, consistent with the discussion in this Opinion, will be granted. Finally, the causes of action for conversion and injunctive relief will be dismissed. The remainder of the motion to dismiss will be denied. An appropriate Order will be filed.

      s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: July 11, 2013